# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **WILLIE REED** | * | **CIVIL ACTION NO. 13-0037** |
| **LA. DOC #348548** | | **Section P** |
| | | |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| | | |
| **BURL CAIN, WARDEN, LOUISIANA** | * | **MAG. JUDGE HAYES** |
| **STATE PRISON** | | |

## REPORT AND RECOMMENDATION

On January 7, 2013, *pro se* Petitioner Willie Reed, an inmate in the custody of Louisiana's Department of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. [doc. # 1]. Petitioner attacks his 2007 second degree murder conviction and the life sentence imposed by the First Judicial District Court, Parish of Caddo. The matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court. For reasons assigned below, it is recommended that the Petition, [doc. # 1], be **DENIED**.

## Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> On June 18, 2006, Defendant shot Alicia Hargrove, who had been his girlfriend for two or three months. Ms. Hargrove died from the gunshot wound approximately 15 hours after she was shot.
>
> Ms. Hargrove and Defendant had known each other for some time prior to June 18, 2006, having met through Defendant's sister, Elizabeth Reed, with whom Ms. Hargrove had grown up and gone to school. At the time of her death, Ms. Hargrove was 31 years old and was employed as a respiratory therapist at Willis–Knighton

Hospital in Bossier City. She lived with her two daughters, Raven and Ralicia Hargrove, in a house located on Forest Oak in Shreveport.

On Friday, June 16, 2006, Ms. Hargrove's father, Louis Hargrove, came into town for a surprise visit. Mr. Hargrove had recently retired from the Air Force and lived in Germany, so he had not seen his daughter in two or three years. On the morning of June 18, Mr. Hargrove was sleeping on the sofa in Ms. Hargrove's living room. Mr. Hargrove testified that his daughter woke him to tell him that she needed to go to work and that his car was blocking her car. Mr. Hargrove told her where his keys were so that she could move the car. Ms. Hargrove then came back into the house, placed the keys on the table and spoke briefly with her father.

After Ms. Hargrove left the house, Mr. Hargrove fell asleep again, waking to "a loud bang." Mr. Hargrove testified that, at first, he thought the noise had been caused by a firecracker, but then he realized that it had been a firearm. Mr. Hargrove estimated that it took him five to six seconds to run to the carport. He further testified that, when he opened the door, "the smoke [from the gun's discharge] was still up under the carport." Mr. Hargrove saw his daughter to his left, leaning against the wall of the carport. He also saw a black male standing in the carport, but was unable to see whether the man had a gun in his hand. Mr. Hargrove testified that he turned his attention to his daughter and Ms. Hargrove said that she had been shot, at which point the shooter said, "I didn't shoot her, she's faking" or "she's lying." The man then fled the scene.

Mr. Hargrove ran into the house to get the phone to call 911. When he came back out into the carport, Ms. Hargrove had her cell phone and was also dialing 911. She told the 911 operator that "Willie Reed" had shot her.

Corporal Richard McDonald and Sergeant J.C. Williams of the Shreveport Police Department arrived within minutes of receipt of the 911 call. Corporal McDonald testified that Ms. Hargrove was still coherent when he arrived, and told him that she had been arguing with her boyfriend, Defendant, "and he just shot me." Ms. Hargrove also gave a brief description that matched Defendant and provided his address. The Shreveport Fire Department then arrived at the scene and immediately transported Ms. Hargrove to the hospital, where she died late that same evening.

2

Investigators recovered a .40 caliber shell casing from under the carport in the vicinity of where the shooter was standing when he shot Ms. Hargrove.[1] One corresponding bullet hole was located in the washroom door. The bullet had traveled through a door leading off the carport, had exited the carport and struck an air-conditioning unit in the back yard. Investigators were unable to locate the bullet.

Corporal Skyler VanZandt with the Shreveport Police Department's crime scene investigation unit testified that the irregularity of the bullet hole in the washroom door indicated that the bullet had been "tumbling," or yawing and spinning end over end, as opposed to traveling in a straight flat line. VanZandt explained that a bullet will tumble after hitting an object, such as a human body.

Dr. Frank Peretti, a forensic pathologist, testified that the bullet entry wound indicated that the bullet had not been tumbling at the time it struck Ms. Hargrove and was not a ricochet. Dr. Peretti further testified that the nature of the entry and exit wounds indicated that Ms. Hargrove had been in a "defensive posture" at the time of the shooting. Dr. Peretti opined that the wound to Ms. Hargrove had been "a distant gunshot wound, probably greater than two feet away" and that the trajectory of the bullet through Ms. Hargrove's body was "right to left slightly back to front in an upward direction."

Corporal David Walls, also of the Shreveport Police Department's crime scene investigation unit, testified that the Shreveport Police Department uses a .40 caliber weapon. Corporal Walls stated that, in order to be fired, a .40 caliber weapon's slide has to be cocked back and released, and that there is an internal safety mechanism on the guns used by the police department. Corporal Walls further testified that a .40 caliber weapon could be single fire or semi-automatic, both of which require pulling a hammer back in order to fire the weapon, and "[y]ou have safeties you can place on it." Corporal Walls allowed that it would be possible for a .40 caliber weapon to accidentally discharge. He also noted, however, that "pull pressures" are normally assigned to triggers in order to prevent accidental discharge and that, absent another object having lodged on the trigger (such as a tree branch), an individual would "have to have intent" to pull the trigger of a .40 caliber weapon.[2]

---

[1] No gun was recovered.

[2] Defendant asserted that the shooting was accidental and could have ricocheted off of the floor of the carport.

On June 30, 2007, the State gave notice of its intent to introduce evidence of Defendant's prior acts of domestic violence. The trial court held a La. C.E. art. 404(B) hearing on December 4, 2007. The State asserted that Defendant's prior acts demonstrated a pattern of violence toward his girlfriends and that this pattern had culminated in the death of Ms. Hargrove; the State asserted that evidence of Defendant's violent actions was admissible to prove Defendant's intent. The defense argued that the prior acts were not relevant other than to show Defendant's bad character, that Defendant's prior acts had not involved any use of a weapon and that the prejudicial nature of the evidence outweighed its probative value. The court ruled that evidence of Defendant's prior bad acts was admissible to demonstrate absence of mistake or accident.

The State called Christy Stafford as a witness and she testified that she has a child with Defendant. She further testified that, on September 6, 1999, Defendant pushed her, causing her to fall on the ground and bruise her face. Nikisha Joseph, who also has a child with Defendant, testified at trial about a physical altercation with Defendant in which he pulled her hair and prevented her from calling for help. That incident occurred on May 2, 1997. The third woman to testify was Ebony Allen, who also has a child with Defendant. Ms. Allen testified that, on May 18, 2002, while she was pregnant with Defendant's child, he had forced his way into her residence and punched her twice in the face. Ms. Allen further testified that Defendant had made numerous threats to her, including threatening to "shoot [her] house up" after seeing a strange car parked in Ms. Allen's driveway.

Ms. Allen's mother, Janet Scott Roberson, testified as to Ms. Allen's injuries on the evening of May 18, 2002. Ms. Roberson testified that Ms. Allen had been "bloody all over," that there had been a trail of blood in her daughter's residence from the doorway through the living room and the house was "in disarray." A photograph of Ms. Allen taken by Ms. Roberson on the evening of May 18, 2002, was also admitted into evidence. Detective G. Horton, who had responded to the call from Ms. Allen's residence on May 18, 2002, testified that Defendant admitted to forcing his way into Ms. Allen's home and punching her several times.

*State v. Reed*, 1 So. 3d 561, 562-64 (La. App. 2 Cir. 2008).

On July 18, 2006, Petitioner was indicted and charged with the second degree murder of Alicia Hargrove.  [doc. # 21-3, p. 18].  Trial began on December 12, 2007.  [doc. # 21-4, p. 3].

4

On December 14, 2007, a jury found Petitioner guilty as charged.  [doc. # 21-3, p. 201].  On January 31, 2008, the trial court sentenced Petitioner to life imprisonment without benefit of probation, parole, or suspension of sentence.  [doc. # 21-5, p. 125].

On July 15, 2008, Petitioner appealed, raising the following claims: (1) insufficient evidence; (2) improper admission of "other crimes" evidence; and (3) an eighth amendment argument suggesting that the mandatory life sentence imposed for second degree murder was disproportionate to the crime committed.  [doc. #s 21-6, p. 67; 21-5, p. 184].  On December 3, 2008, the appellate court affirmed Petitioner's conviction and sentence.  *Reed*, 1 So. 3d at 569. The Louisiana Supreme Court denied Petitioner's application for writs on October 2, 2009.  [doc. # 21-6, p. 143].  Petitioner did not seek further direct review in the United States Supreme Court.

On July 23, 2010, Petitioner filed a *pro se* application for post-conviction relief in the trial court.  *Id.* at 163.  There, Petitioner raised the following claims: (1) ineffective assistance of trial and appellate counsel; (2) insufficient evidence; and (3) the trial court's jury charge improperly shifted the burden of proof.  *Id.* at 173.  On February 14, 2012, the trial court denied Petitioner's application.  [doc. # 21-7, p. 71].  Petitioner subsequently sought review of the trial court's denial of that application in the Second Circuit and the Louisiana Supreme Court.  *Id.* at 78, 128.  On May 17, 2012, the appellate court denied Petitioner's writ application.  *Id.* at 123. The Louisiana Supreme Court likewise denied writs on October 12, 2012.  *Id.* at 183.

Petitioner filed the instant Petition on January 7, 2013, requesting relief for the following claims: (1) Ineffective assistance of trial and appellate counsel; (2) Insufficient evidence; (3) Trial court error due to an improper burden shifting jury instruction; and (4) Improper introduction of "other crimes" evidence.  [doc. # 1-1, p. 5].

The matter is now before the undersigned.

## Law and Analysis

**I.      Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id.* at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . .

[the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**II.     Petitioner's Claims**

A. Claim One: Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel was ineffective for: (1) failing to interview any witnesseses that would testify in support his defense theory that the shooting was accidental; (2) failing to object to an erroneous jury instruction; (3) denying Petitioner his constitutional right to testify in his own defense; and (4) failing to object to the admission of Petitioner's grand jury testimony.  [doc. # 1-1, p. 13].  Petitioner alleges that his appellate counsel was ineffective for failing to present Petitioner's insufficient evidence claim to the Louisiana Supreme Court on direct appeal.  [doc. # 1-1, p. 20].

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right.  *Strickland v. Wash.*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him.  *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *U.S. v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

8

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. To obtain relief, a Petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

      i. Failure to Conduct Pretrial Investigation

Petitioner first claims that trial counsel was ineffective for failing to interview any witnesseses that would testify in support his defense theory that the shooting was accidental. [doc. # 1-1, p. 15]. Petitioner begins by arguing: "[T]he State's theory was that petitioner [] *walked* over to the victim's house with the intent to kill her after seeing a strange car in her driveway . . . ." *Id.* (emphasis added). According to Petitioner, there were five witnesses that were willing to testify that, instead of walking to the victim's home, the victim actually picked Petitioner up in her vehicle. *Id.* at 15. Convolutedly, Petitioner argues that the witnesses' testimony would have negated the State's specific intent argument because it would have shown that instead of walking to the victim's home, seeing a strange car in the victim's driveway, and

9

then killing the victim in a jealous rage (i.e. the State's theory according to Petitioner), the victim picked Petitioner up and drove him to her house. *Id.* at 16. That argument aside, Petitioner also argues that counsel was ineffective for failing to investigate the scene of the crime for any evidence that would support an accidental shooting defense. *Id.* at 17.

To begin with, claims of uncalled witnesses are not favored in federal *habeas corpus* review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of the content of a prospective witness's testimony are largely speculative. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citing *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a *habeas* court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). A petitioner must show not only that a witness's testimony would have been favorable, but also that the witness would have, in fact, testified at trial. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

Here, although Petitioner does present the affidavits of three witnesses who aver that they would have testified, the Court, nevertheless, cannot conclude that counsel was ineffective for failing to call the witnesses at trial. First, in light of the fact that counsel devised a defense, filed pretrial motions, participated in pretrial hearings, conducted *voir dire*, made meritorious objections during trial, filed post-trial motions, cross-examined state witnesses, and gave closing argument, the Court cannot say that counsel's performance was deficient. In other words

10

Petitioner's allegations do not demonstrate that counsel's performance, in light of the entire proceeding, was so inadequate as to render his trial unfair. *See Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981) ("[W]hat is ultimately important is trial counsel's performance on balance and in the context of the entire case."). The fact that the counsel was not successful, i.e. that Petitioner was convicted, does not establish that counsel's actions were deficient. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Second, even if Petitioner could demonstrate that counsel's performance was deficient, the Court cannot conclude that, but for counsel's acts or omissions, the result of the proceeding would have been different. The physical evidence and testimony presented overwhelmingly negate Petitioner's argument that the shooting was accidental. In addition, the witness statements in Petitioner's proffered affidavits are of little relevance and probably would not have been admitted into evidence at trial.

To explain, although Petitioner states that five witnesses were willing to testify, Petitioner only presents three witness affidavits. [doc. # 1-2, p. 16-18]. Of the three affiants, only affiant Tracy Chambers' affidavit supports Petitioner's argument that the victim transported him to her house . . . as opposed to Petitioner's walking to her house. *Id.* at 16. However, even lending credence to affiant Chambers' averments, the Court is unable to decipher the relevance of Petitioner's contention that the victim transported him to her house. The mode of transportation to the victim's home (the scene of the crime), whether by foot or by automobile, has no bearing on whether Petitioner intended to shoot the victim or accidentally shot the victim. Even if the victim transported Petitioner to her home, Petitioner still could have seen a strange car in the

11

victim's driveway and then killed the victim in a jealous rage (again, the State's theory according to Petitioner).  Petitioner's *non sequitur*, if presented at trial, would not have had any impact on the trial's outcome.

The remaining affiants do not address Petitioner's aforementioned convoluted argument. Instead, the affiants aver that Petitioner told both of them that he accidentally shot the victim.[3] *Id.* at 17-18.  While these statements are certainly relevant, they are likely inadmissible hearsay statements.[4]  *See* LA. CODE EVID. ANN. art 801, 802.  The rationale behind barring statements like these is that defendants should not be able to immunize prior, self-bolstering statements from cross-examination by declining to testify and then by subsequently presenting the statements via the testimony of other witnesses.  Consequently, as the affiant's averments would not have been admitted at trial, they could not have affected the trial's outcome.

As noted above, Petitioner also argues that counsel was ineffective for failing to investigate the scene of the crime for any evidence that would support an accidental shooting defense.  *Id.* at 17.  In that regard, when assessing the reasonableness of an attorney's investigation, a court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005), (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).  "Counsel is not required to pursue every path until it bears fruit or until all conceivable hope withers."  *Lovett v. Fla.*, 627 F.2d 706, 708 (5th Cir. 1980).  In order to establish that an

---

[3] Neither affiant witnessed the shooting.

[4] Petitioner has not shown that the statements in the affidavits fall under any exception to the hearsay rule.

attorney was ineffective for failing to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Miller*, 420 F.3d at 361.

Here, Petitioner does not specify what evidence further investigation would have revealed.  The Court cannot conclude, from Petitioner's unsupported claim, that counsel was ineffective for failing to investigate the crime scene for evidence that would support Petitioner's accidental shooting claim.

In sum, Petitioner has not shown that counsel was ineffective for failing to call the three witnesses to testify at trial or for failing to investigate the scene of the crime for relevant evidence.  These claims should be **DENIED**.

ii. Failure to Object to an Erroneous Jury Instruction

Petitioner claims that counsel was ineffective for failing to object to an alleged erroneous jury instruction.  [doc. # 1-1, p. 17].  Petitioner claims that the following instruction regarding manslaughter improperly shifted burden of proof to him:

> 'Sudden passion' and 'heat of blood' are not elements of Manslaughter. They are mitigating factors in the nature of defense. The burden of proof is upon the defendant to establish such factors.  If the defense establishes such factors by a preponderance of the evidence, the defense is entitled to a Manslaughter verdict.

[doc. # 1-2, p. 11].

In *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990), the court made clear that counsel is not required to make futile motions or objections.  With that in mind, Louisiana courts have consistently held that, commensurate with the jury instruction above, "'sudden passion' and 'heat of blood' are not elements of the offense of manslaughter; rather, they are mitigatory factors in

the nature of a defense . . . ."  *State v. Lombard*, 486 So. 2d 106, 111 (La. 1996) (citing *State v. Tompkins*, 403 So. 2d 644 (La. 1981); *State v. Temple*, 394 So. 2d 259 (La. 1981); *State v. Peterson*, 290 So. 2d 307 (La. 1974)).  Because the jury instructions were entirely consistent with Louisiana law, any objection would have been futile.  Accordingly, counsel did not render ineffective assistance.  This claim should be **DENIED**.

     iii. <u>Denial of the Right to Testify</u>

     Petitioner next claims that counsel was ineffective because counsel prevented Petitioner from testifying despite the fact that Petitioner repeatedly informed counsel of his desire to testify. [doc. # 1-1, p. 18].  Petitioner contends that counsel "told petitioner that he felt that petitioner did not need to testify" and that "he (trial counsel) was the one who made [the] ultimate determination as to whether [Petitioner] would testify or not testify."  *Id.* at 19.

     A criminal defendant has the right to testify in his own defense.  *U.S. v. Flores–Martinez*, 677 F.3d 699, 708 (5th Cir. 2012) (citing *Harris v. N.Y.*, 401 U.S. 222, 225 (1971).  The decision to testify is "ultimately for the accused to make."  *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977).  When a petitioner argues that his attorney interfered with his right to testify, this Court applies the *Strickland* standard.  *See U.S. v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).  But to begin to apply the *Strickland* standard, Petitioner must first show that counsel did in fact interfere with his right.  In other words, "although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify." *Flores-Martinez*, 677 F.3d at 711.

     Here, Petitioner has not overcome the presumption that he assented to his attorney's decision not to have him testify.  To be sure, Petitioner's "failure to stand up in court and to insist

on testifying is not dispositive of the issue whether he acquiesced in his attorney's decision that he not testify." *U.S. v. Araujo*, 77 Fed. Appx 276, 278 (5th Cir. 2003).  But, "a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005).  To that end, Petitioner has not presented any specific evidence showing that counsel did anything that prevented him from exercising his constitutional right.  The record is devoid of any showing that counsel refused to let him testify.  Petitioner's assertions fail to demonstrate the existence of any constitutional violation.

Moreover, in denying post-conviction relief on this claim, the trial court stated, "Petitioner has not provided any proof that he was barred for [sic] testifying on his own behalf . . . ."  Accordingly, and for the reasons stated above, this Court cannot say that the state *habeas* court's denial of this claim was an unreasonable application of *Strickland*.  In sum, this ineffective assistance of counsel claim is without merit.

Nevertheless, in his reply to the State's Answer, Petitioner requests an evidentiary hearing to uncover evidence necessary to support his contention.  [doc. # 22, p. 4].  In  *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991), the Seventh Circuit recognized that a Petitioner's claim that he told his trial attorney he wished to testify and that his attorney forbade him from doing so

> is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly

forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Citing *Underwood*, the Fifth Circuit has

observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. See [Underwood, 939 F.2d at 476] ... (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable."

*U.S. v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999).

Here, although Petitioner states that he asked to be allowed to testify, he has not presented any evidence to the state courts or to this Court that might establish this fact. Petitioner has had ample time and opportunity to pursue or file evidence to support his suggestion that counsel refused to let him testify. Under the circumstances, it appears that no further opportunity to obtain such evidence need be provided. Petitioner can use the 14-day objection period following the entry of this Report and Recommendation to file such evidence, if he has any, before his claim is dismissed with prejudice. *See Davis v. Prince*, 2011 WL 5878155 (E.D. La. 2011).

For these reasons, Petitioner has not demonstrated any deficiency arising from counsel's performance. He is not entitled to an evidentiary hearing and is not entitled to relief on this claim overall. This claim should be **DENIED**.

iv. Failure to Object to the Introduction of Petitioner's Grand Jury Testimony

Petitioner claims that counsel was ineffective for failing to object to the State's introduction of Petitioner's grand jury testimony at trial. [doc. # 1-1, p. 20]. He claims further that counsel's failure deprived him of his Fifth Amendment right against self-incrimination. *Id.*

16

"Any and all statements of an accused person not excluded by . . . the privilege against self-incrimination may be used against him as an admission and are not hearsay." *U.S. v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984) (citing *U.S. v. Evans*, 572 F.2d 455, 488 (5th Cir. 1978)). "Admissions include a defendant's relevant grand jury testimony offered by the government during its case-in-chief." *Id.* "A defendant's grand jury testimony, when voluntarily given, is not privileged and may be admissible against him in a later prosecution." *Id.*

Here, Petitioner's Fifth Amendment privilege was not violated by the admission of his grand jury testimony at trial. The following colloquy to place at the grand jury proceeding:

Q. Mr. Reed, do you understand that you are a target of this grand jury investigation?

A. Yes.

Q. As a target you have the following rights and are entitled to the following warnings. 1, you have the right to remain silent and anything said by you will be considered and can be used against you by this grand jury in these deliberations, as well as anything said by you can and will be used against you in other proceedings, just as in a trial before a court of law. 2, you have a right to be represented by an attorney and to have that attorney present throughout your testimony and that he may consult with you and you with him at any time. Do you understand your rights?

A. Yes.

Q. Is it your desire that Stephen Glassell, an attorney-at-law, be present and represent you for the purpose of this hearing before the grand jury?

A. Yes.

Q. Do you understand that Stephen Glassell, your attorney, is prohibited from objecting or directing or arguing to or before this grand jury but he can consult with you during the testimony; do you understand that?

A. Yes.

Q. Do you understand that both the state's attorney and as well as each and every member of the grand jury are empowered to question you regarding your testimony?

17

A. Yes.

Q. Do you understand that you are under a legal oath to tell the truth before this grand jury?

A. Yes.

Q. With these understandings and with your attorney present and representing you, are you willing to waive your right to remain silent and testify freely and voluntarily before this grand jury?

A. Yes.

[doc. # 21-7, p. 184-186].  As the colloquy illustrates, it is clear that Petitioner gave his grand jury testimony voluntarily.[5]  Consequently, as his Fifth Amendment privilege was not violated, the testimony was admissible at trial as an admission and any objection by counsel would have been futile.  *See Koch*, 907 F.2d at 527 (counsel is not required to make futile motions or objections).  This claim is without merit and should be **DENIED**.

v. Ineffective Assistance of Appellate Counsel

Petitioner's final ineffective assistance claim states that appellate counsel was ineffective for failing to present Petitioner's insufficient evidence claim to the Louisiana Supreme Court on direct appeal.  [doc. # 1-1, p. 20].  According to Petitioner, the insufficient evidence claim was

---

[5] Petitioner does not allege that his testimony was coerced or that he was not fully informed of his rights prior to testifying.  In addition, the warnings given by the court here are akin to the warnings given to the defendant in *U.S. v. Washington*, 431 U.S. 181, 188 (1977).  There, like here, the defendant was warned , *inter alia*, that he had a right to remain silent, that anything he said could be used against him in court, and that he had a right to an attorney.  *Id.* at 183-184.  In addition, like here, the defendant in *Washington* clearly responded in the affirmative when asked whether he understood his rights.  *Id.* at 184.  In reviewing the colloquy there, the Supreme Court stated, "[i]t is inconceivable that such a warning would fail to alert him to his right to refuse to answer any question which might incriminate him."  *Id.* at 188.  Here, it is likewise inconceivable that Petitioner did not voluntarily testify after he was given the warnings outlined above.

18

clearly meritorious because appellate counsel chose to raise and argue it before the Second Circuit Court of Appeal.  *Id.* at 21.

To prove that an appellate counsel was ineffective, a petitioner must satisfy the two-prong test enunciated in *Strickland*, *supra*, that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004).  An appellate counsel's performance may not be deemed deficient for failing to argue a frivolous or non-meritorious claim.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Similarly, a showing of prejudice requires that a petitioner show a reasonable probability that he would have succeeded on appeal but for his counsel's deficient representation.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Here, the state appellate court denied Petitioner's insufficient evidence claim on the merits.  *Reed*, 1 So. 3d at 566.  Subsequently, the trial court, upon collateral review, denied Petitioner's ineffective assistance of appellate counsel claim, likewise finding that the insufficient evidence claim had no merit.  [doc. # 21-7, p. 73].

This Court, having reviewed the record, finds that the evidence presented at trial was more than sufficient to sustain the conviction.  The state appellate court's denial of the claim on the merits was not only reasonable, but was correct.  Therefore petitioner's claim based on a failure to present the insufficient evidence claim to the Louisiana Supreme Court is meritless. Because the claim is meritless, counsel did not act deficiently in failing to raise it on appeal to the Louisiana Supreme Court.  In addition, even if counsel's failure to raise the claim could be considered deficient, the invalidity of the claim demonstrates that Petitioner was not prejudiced by such deficiency.  In sum, the Court cannot find that the state trial court erred, much less

19

unreasonably applied *Strickland* in determining that Petitioner's ineffective assistance of appellate counsel claim was without merit.  This claim should be **DENIED**.

B. <u>Claims Two and Three: Insufficient Evidence and Trial Court Error</u>

Petitioner's next two claims allege, respectively, that there was insufficient evidence to find that he intended to kill the victim and that the trial court's jury instruction was improper.  [doc. # 1-1, p. 21, 24].  The trial court, in denying collateral relief, held that Petitioner's claims failed to state grounds upon which relief can be granted in an application for post-conviction relief.  [doc. # 21-7, p. 72].  Undoubtedly, the trial court was referring to LA. CODE CRIM. PROC. ANN. art. 930:3, which exhaustively lists the grounds for relief available to a state court petitioner.  The trial court likewise denied Petitioner's "trial court error" claim because it "was not objected to at trial even though counsel and Petitioner were present."  [doc. # 21-7, p. 72].  Without question, the court relied on LA. CODE CRIM. PROC. ANN. art. 841, which provides: "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence."

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and is adequate to support that judgment.  *See Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or *habeas* review.  *Amos v. Scott*, 61 F.3d 333, 388 (5th Cir. 1995).  Procedural default does not bar federal court review of a federal claim raised in a *habeas* petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is

"independent" of federal law and rests on a state procedural bar.  *Glover*, 128 F.3d at 902.  A state court expressly bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).  Similarly, to be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Id.*

Here, as mentioned, the trial court relied on LA. CODE CRIM. PROC. ANN. art. 930:3 and 841 in denying Petitioner's claims.  It is well-settled that Louisiana's contemporaneous objection rule, article 841, is an independent and adequate state procedural ground that is regularly applied by the Louisiana courts.  *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977)).  It is equally well-settled that article 930:3 is an independent and adequate state procedural ground that is regularly applied by the Louisiana courts.  *See, e.g., Hull v. Stalder*, 2000 WL 1598016, at *1 (5th Cir. Sept. 28, 2000); *Johnson v. Cain*, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012); *Taylor v. Cain*, 2008 WL 4186883, at *16 (E.D. La. Sept. 10, 2008).  Accordingly, it appears that Petitioner's claims are immune from federal review.

A petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  *Glover*, 128 F.3d at 902.  To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The mere fact that the petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or

21

objection despite recognizing it, does not constitute cause for a procedural default.  *Id.* at 486.

Here, Petitioner has not offered any cause for the default that would excuse the procedural bars imposed by the trial court.  Nor does this Court's review of the record reveal any factor external to the defense that prevented Petitioner from properly objecting.  In the same way, a review of the record does not reveal any external condition that prevented Petitioner from raising his insufficient evidence claim in a procedurally proper manner.  As to both claims, the record does not reflect any action or inaction on the part of the State which prevented Petitioner from properly objecting to the "trial court error" or which prevented Petitioner from raising his insufficient evidence claim in procedurally correct manner.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997).  Having failed to show an objective cause for his default, the Court does not need to determine whether prejudice existed.

Petitioner's claim is thus procedurally barred from review absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed.  *Hogue*, 131 F.3d at 497.  To establish a fundamental miscarriage of justice, Petitioner must provide this Court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).  To satisfy the factual innocence standard, Petitioner must show that "but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense."  *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Petitioner makes no real argument that a fundamental miscarriage of justice will occur if his claims are not reviewed by this Court.  Accordingly, Petitioner has failed to overcome the

procedural bar to the two claims at issue.  The claims are procedurally barred and should be **DISMISSED**.

C. Claim Four: Improper Admission of "Other Crimes" Evidence

For Petitioner's final claim, he argues that the trial court improperly admitted evidence of other crimes of domestic violence that he committed against girlfriends from previous relationships, in violation of LA. CODE EVID. ANN. art. 404.  [doc. # 1-1, p. 28].  He also argues that the improper admission violated his Fifth and Fourteenth Amendment rights.  *Id.*

The majority of Petitioner's argument centers around the alleged violation of LA. CODE EVID. ANN. art. 404.  Petitioner's discussion of his alleged Fifth and Fourteenth Amendment violations is scant.  As to the alleged erroneous admission of evidence in violation of the state statute, Petitioner makes no constitutional challenge.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Relatedly, "[i]n habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law."  *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).  Because Petitioner fails to allege any actual constitutional violation, the claim, with regard to the state evidentiary statute, is not cognizable under *habeas* review.

Petitioner's constitutional allegations fare no better.  Even if Petitioner could show that the evidence was improperly admitted under Louisiana evidentiary law[6], federal *habeas* relief would still not be warranted.  The Fifth Circuit has explained:

---

[6] The Second Circuit Court of appeal reviewed the instant Claim under the Louisiana law and held that the trial court did not err in admitting the evidence.  *Reed*, 1 So. 3d at 569.

23

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

*Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted).

Here, the Court cannot say that the evidence of Petitioner's prior acts played a crucial or highly significant role in Petitioner's conviction.  The Court agrees with the Louisiana Second Circuit Court of Appeal's observation that "[t]he testimony as described herein leads us to conclude that the jury's finding of Defendant's guilt is 'surely unattributable' to any erroneous admission of the evidence of prior bad acts. . . . a rational finder of fact could have weighed the evidence in this case and found that Defendant's guilt had been proven beyond a reasonable doubt, even absent the testimony of the former girlfriends of Defendant." *Reed*, 1 So. 3d at 569. Accordingly, the admission of the witnesses' testimony detailing prior acts of domestic violence did not result in a denial of fundamental fairness.  This assignment of error is without merit and should be **DENIED**.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas corpus* filed by Petitioner Willie Reed, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or

response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 27th day of January, 2014.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE

25